# Richmond

## INDEMNITY INSURANCE COMPANY OF NORTH AMERICA V. RUTHERFORD FREIGHT LINES, INC.

May 7, 1951.

Record No. 3771.

Present, All the Justices.

The opinion states the case.

*Donald T. Stant* and *Bradley Roberts,* for the plaintiff in error.

*Jones, Woodward* and *Miles,* for the defendant in error.

WHITTLE J., delivered the opinion of the court.

A notice of motion for judgment was filed by Indemnity Insurance Company of North America, plaintiff, against Rutherford Freight Lines, Incorporated, defendant, seeking to recover the sum of $5,780.30, with interest thereon from January 15, 1947. The basis of the action is as follows: Rutherford Freight Lines, Incorporated, carried insurance against liability for property damage and bodily injury under a policy written by the plaintiff insurance company on September 1, 1945. This policy expired August 31, 1946. The experience of this risk had been favorable and the Rutherford Freight Lines had earned and had received a substantial credit from the manual rates, and the premium stated in the policy, as is customary, was established on the basis of such experience rating.

On July 27, 1945, the stockholders of Rutherford Freight Lines, Inc. sold the entire capital stock in the corporation, and the purchasers, on that date, elected new officers and directors of the corporation and continued operation of the freight lines. No change was made in the charter of the corporation and no change was made in the financial structure of the company.

The plaintiff insurance company contends that its first knowledge of the change in stock ownership of the freight lines was about December, 1945, and after learning of this change they sought to recover of the freight lines the difference between the preferred earned rate of the freight lines and the

manual rate, which would apply in the case of an insured with no earned rating. It is agreed that the difference in amount would be the sum sued for, $5,780.30.

The insurance company relies upon a ruling received by it from the Virginia Automobile Rate Administrative Bureau dated January 31, 1946. The material part of this ruling is as follows:

"From the information furnished, it would appear that there has been a material change in ownership and operating management. There has been a complete change in the members of the Board of Directors, as well as stock ownership, the risk now being owned 100% by Roy B. Moore, whereas, prior to the change Messrs. R. C., B. F. and E. J. Rutherford each owned one-third interest."

The defendant freight lines filed its grounds of defense contending that the rates in the policy were the applicable rates and that the rates which the insurance company sought to change were not required by Order 610 of the State Corporation Commission. The material part of this order is as follows:

"*Change in Ownership.* The experience incurred by any risk shall be included in the future rating of the operations regardless of any change in ownership, control or management, except under the following conditions:

"(a) Upon the acquisition of the entire assets and goodwill—

"(1) Through purchase or inheritance by a new individual owner not previously identified with the management of the retiring establishment. (Except as provided in section covering Mergers and Consolidation.)

"(2) Through purchase by a newly formed co-partnership, the majority interest in which is held by a group of new owners not identified with the ownership or management of the retiring establishment. (Except as provided in section covering Mergers and Consolidation.)

"(3) Through purchase by a newly formed corporation, the majority interest in which is held by a group of new owners who have elected a board of directors a majority of whom were not individual owners, partners or directors of the retiring establishment. (Except as provided in section covering Mergers and Consolidation.)

"(b) Upon a reorganization of an existing corporation

whereby the majority interest is vested in a group of new owners, who have elected a board of directors a majority of whom were not previously owners or directors of the corporation and were not previously connected with its management.

"*Partial Sale.* If an establishment sells or otherwise disposes of a part of its assets, but otherwise continues to operate its business, all experience incurred prior to the sale shall be used in future ratings of the risk."

The question in this case is, does this Order 610 of the State Corporation Commission deprive the defendant freight lines of its experience rating. The applicable part of Order 610 is:

"*Change in Ownership.* The experience incurred by any risk shall be included in the future rating of the operations regardless of any change in ownership, control or management, except under the following conditions: . . .

"(b) Upon a *reorganization* of an existing corporation whereby the majority interest is vested in a group of new owners who have elected a board of directors a majority of whom were not previously owners or directors of the corporation and were not previously connected with its management." (Italics ours.)

The point is therefore narrowed down to the single question: Does the sale of all the capital stock of a corporation by one group to another person or group, with the consequent change of the officers and directors of the company, amount to a reorganization of the corporation?

The question of law and fact was submitted, through stipulation, to the trial judge for decision, and he held that the sale of all the capital stock of the company was not a reorganization thereof and dismissed the case at the costs of the insurance company. From that decision this writ of error was granted.

This previously earned experience rating is a valuable asset of the company and passes with the other assets of the corporation unless nullified by paragraph (b) in the administrative order No. 610. If this paragraph of the order prevents its passage then the effect is to create a forfeiture of the asset, and in this view the section must be strictly construed, if possible, to avoid a forfeiture, which is never favored.

This administrative order was prepared by the one body in this Commonwealth which, above all others, knows the meaning of corporate terms,—The State Corporation Commission.

When this commission used the words, "Upon a *reorganization* of an existing corporation, etc.", it surely knew the meaning thereof. It knew that the sale of sufficient stock in a corporation, which might carry with it the complete change in the directors and officers of the company, in itself is not a reorganization, and it also knew that the sale of all the capital stock, which would ordinarily entail the election of a new board of directors and new officers, is not a reorganization of the corporation.

In some instances a small minority of stock ownership controls large corporations. Suppose the stockholders in a company with a favorable experience rating should decide that they did not like the management and voted to turn out the entire board of directors and elect a new board, and these new directors decided to elect an entire new slate of officers, thus completely changing the management of the company, no sale of stock having taken place,—could it be contended that the experience rating earned by the old management would be lost to the new? We think not. The experience rating is an asset of the corporation and, unless there is a reorganization under our interpretation of paragraph (b) of the order, the asset is not lost.

In Cook on Corporations, 7 Ed., Vol. 4, p. 3456, it is said:

"A reorganization of a corporation is a business arrangement whereby the stock and bonds of the company are readjusted as to amount, income or priority, or the property is sold to a new corporation for new stock and bonds, or the property is sold by foreclosure of a mortgage upon it and the purchaser buys for himself and such of the old stockholders and bondholders as he associates with him."

The following definition is found in Black's Law Dictionary, 3d Ed., p. 1531:

"REORGANIZATION—The carrying out, by proper agreements and legal proceedings, of a business plan for winding up the affairs of, or foreclosing a mortgage or mortgages upon the property of, insolvent corporations, more frequently railroad companies. It is usually accomplished by the judicial sale of the corporate property and franchises, and the formation by the purchasers of a new corporation. The property and franchises are thereupon vested in the new corporation and its stocks and bonds are divided among such of the parties interested in the old company as are parties to the reorganization plan."

In the case of *Craddock-Terry Co.* v. *Powell,* 180 Va. 242, 22 S.E. (2d) 30, where a new corporation was formed to take over the old, we held this to be a reorganization, citing C.J.S., Vol. 19, p. 1318, as follows:

"Reorganization of a corporation is the reconstruction or rehabilitation of an existing corporation. . . .

"Reorganization, in the law of corporations, has been defined to mean that by some process a corporation has organized anew, usually effected by the dissolution of one and the organization of a new corporation to take the property and franchise of the first and to continue its business. . . . It has been held that where a new corporation is formed by stockholders and directors of an existing corporation, and its directors and practically all the stockholders, franchises, and property are identical with those of the old corporation, the transaction both in fact and in law amounts to a reorganization of the old corporation."

The sale of the stock in Rutherford Freight Lines, Incorporated, in this instance, does not amount to a reorganization of the company as contemplated in paragraph (b) of Order 610 of the State Corporation Commission, and therefore the decision of the trial court is affirmed.

*Affirmed.*